Enright Elliott, Andrew Smith, appearing for Appellant. Alex, you have appeared for Appellate. Good morning, Mr. Smith. Everyone reserve some time for rebuttal. Yes, Your Honor. Three minutes. Thank you very much. We need to see. Please support Andrew Smith for the Appellant. Your Honor, after the Bankruptcy Court's decision in this case, the U.S. Supreme Court issued their ruling in Siegel v. Law, which seemed to say, or did say, that the Bankruptcy Court cannot surcharge an exemption unless the authority for that is in the statutes creating the exemption or in California law. And the specific misconduct in that case was lying about a non-existent trustee. Now, I recognize there's a difference in this case and that. Well, there's, you know, you're kind of lying, too, copiously. But in light of Law v. Siegel, aren't we in a position where we have to vacate and remand the trial court's order for an examination of further State and Bankruptcy Court issues? Because the Supreme Court said that in Law v. Siegel, quite broadly, that as a matter of equity, Bankruptcy Courts could not, in the absence of statutory authority, disallow an exemption. So isn't that where we are? Exactly correct, Your Honor. But it seems that I have some time. I was trying to make it easy. I know the old civil procedure. You stop when you're ahead, and if the judge agrees with you, you keep your mouth shut. But I wouldn't fall for that. So you perceive that you're a pair, obviously. Yes. OK. The thing is, Your Honor, that the Siegel v. Law seems to be, when you read it, not really completely new law. It seems to talk about old law and very not arguable. And so I'd like the court to consider, Siegel v. Law said the lower court had no jurisdiction absent of statutory authority, and therefore I'd like this court to simply rule in our favor right now and allow us the homestead. You don't intend to do that? We're an appellate tribunal. We don't have the power to make the required findings. We can't do that. OK. Well, on that note, I probably have finished very quickly, and I apologize for not filing a reply brief. But I think we got the issue. OK. The trustee's brief seems to be asking the court to bring up a new issue, a new factual finding, and Your Honor's going to do that. So I suppose I'm now going to reserve 13 minutes. All right. Thanks. I would ask this court to appoint an attorney for Diane Bale. Our case is distinguished from Law v. Siegel. And in light of the new rule, we would like to propose alternative theory. There were a few cases that allowed Law v. Siegel Well, in light of what the prior discussion, if we vacate and remand, won't you be able to raise your alternative theories in the appropriate place, the bankruptcy court, rather than before us? I would like to, since the ruling in Law v. Siegel came after the bankruptcy proceedings and the appellate appeal, I would like to have some time to present the alternative theory. Is your argument that we could affirm on any basis established by the record anything that would be sufficient for us to rule on alternative theory? I'm sorry, I didn't speak in the microphone. Is your theory that we can affirm on any basis that is established by the record, so you're going to use the record to establish an alternative basis for us? Yes, ma'am. So, even without the elimination of that case, the appellate would still not be entitled to the homestead declaration and would not be able to claim the homestead if he's bankruptcy filed, because, due to the fact that he did not have legal title or equitable interest in the property he now claims exempt, especially when the appellant acquired that property post-discharge. Well, is there an adequate factual record for us to make a determination on the equitable interest? I realize that the record is quite clear as to legal title and on the petition date the debtor did not have legal title on the property. So that, to be said, there was a declared homestead under California law that the fact that the debtor divested himself of legal title killed him on that one. But there is an alternative theory for establishing a homestead that he lived there and intended the property to be his homestead. And my review of the record, correct me if I'm wrong, tend to indicate that the court stopped after its equitable determination and never really got evidence on the debtor's intent here. Frankly, it might be very interesting to get Mr. Elliott on the witness stand to testify about his intent. I'd love to be there. But I don't think there's anything in the record that says explicitly what his intent was. Well, Your Honor, I agree that the declared homestead was destroyed when he transferred the property. So now we have to deal with the automatic exemption, which our position he's still not entitled to claim because under Owen v. Owen case, which has been established law in California, the general proposition that the nature and extent of bankruptcy petition's right to exemption under Section 522 are determined as of the filing date of the petition. On that filing date of the petition, the client did not have ownership or any interest or legal title to that property. It's the title. Go ahead. Well, but doesn't the law also provide that there can be continuous possession? It does, but it also talks about the ownership. But isn't that fact-finding that needs to be determined by the trial court? There was no evidence presented otherwise. There was the evidence of his friend who said that she knew he lived at the property at some points during December. It's not clear that he lived there on December 1st, but there is that evidence. Correct, Your Honor, but he didn't claim the exemption because he didn't have ownership of the property. So had he done so at the time of his original filing and then amended the exemption, then law v. Siegel would apply. In our case, Schedule C reflected a completely new exemption which appellant lacks statutory basis, and he lacks statutory basis because there is an established law under Owen v. Owen, and there are other few cases in Regates and Culver v. Shoe that clearly state that all of the facts as to the exemption are determined as of the filing date. On that petition date, the appellant did not have title to back income property to claim the exemption. The petition that the appellant filed under the penalty of perjury on December 2011, and this is the controlling date, which according to his petition, he did not even reside in that property. On page 2, there's two boxes. Box 1 reads street and address of the debtor, which he said... And they have a wonderful argument, I kind of like it, that, oh, that was my street address. I didn't reside there. Right. So it was not listed on the first page. There is a second box that says mailing address. The appellant did not state his address. Then there's a Schedule C that he did not list. Then there's a statement of affairs, number 15, which clearly asked the debtor that if he moved within the last three years. That was also not checked. So since the court... Well, you know, I think Mr. Smith would be hard-pressed to argue that his client didn't lie numerous times. The question is whether under California law you take away his homestead exemption because he lied. And... Take it away, whether he had one. Whether he had one, no. So if you look at the presidency and if we disregard the lies in light of the law versus Segal, presumably he was residing there. According to California statute, and I believe that was the intent of the legislature, that the California Homestead Act protects the property owners and the controlling date of the date of the petition filing. On that date of the petition filing, even if he possibly resided there, there was no ownership of that property to be protected by homestead. So under our alternative theory, the declarable homestead was destroyed based on subsequent transfer, and he's not entitled to claim the automatic exemption because he had no ownership in the property on the date of the petition filing. So your argument would be if... I share the concern Judge Kirscher stated, which is, on this record, if we can get comfortable with the state law being that ownership is absolutely required, that mere possession isn't enough, perhaps that would be an alternative basis for our affirmance. But the law seems to suggest that possession, that there's a state-of-mind element there that might need to be tried. I don't know that you lose, I just don't think it's necessarily something we can do for you on appeal. Well, I do, Your Honor, but I also believe that if you look at Section 704.710, the definition of the dwelling is sort of broad, but if you look at Section 704.910, it specifically defines the dwelling as the interest in real estate property. And it's our position that the legislative intent was to specifically protect ownership interests, not the possessor interests, and apply the California Homestead Act to property owners. Therefore, on the controlling date of the petition date, the appellant did not have legal title to the property, and therefore he could not claim the exemption. Thank you, Your Honor. Just for a point of clarification, was there also in a collateral action a turnover of property that was done in this case? At the trial court level? There was two transfers. Did the court order a turnover? Yes, the court did. Yes. Of what property? Of this particular property. Buckingham? Yes. Thank you. Your Honors, our appellate court is reviewing the ruling of the trial judge. And this argument was never even posted in bankruptcy court, argued or considered. And counsel's treating this court as if it was a trial court, and this was a motion. Well, you've got to give her credit. I mean, she'd love to get an affirmance now and then be done with it. And counsel's just absolutely wrong on the type of interest that's protected by the homesteader. And her own brief shows that. She, on page six of the brief, counseled, quote, California Code of Civil Procedure 7049-10C, as any interest in real property, whether present or future, vested or contingent, legal or equitable. She cited the trial court level case, Knutson, where there was a specific finding by a trial judge, Wilson, as whether a transfer to a vested in all interest. And I hate to, well, I don't really, because I'm going to do it, use my client's wrongdoing as an argument to support. Your Honors say he's lying. And I suppose I'll be here in a few months on another appeal arguing about that. But again, again, the law versus legal, worse lies making up a fictitious person in China. And by the way, I was Mr. Law's lawyer for a while. But nevertheless, he said, I'll go with Gordon. Sure enough, he made it. But the other matter is this, about the other type of wrongdoing. Counsel has argued, and the facts seem to show, what could be called a fraudulent conveyance. I'm not going to say real fraud, but without consideration to put assets out of reach. There's case law that I don't even need to cite it because it's very clear that a transferee in a fraudulent conveyance has bare legal title. And the debtor keeps equitable title because creditors can execute against that equitable title. So just on the face of it, my client had an equitable interest. And yes, as a fraudulent transferer, but he kept an equitable interest. And again, there's case law, I'll cite one bar, Lawbury v. Carlson, 184, 4th, 931. Specifically says, there's nowhere in the statute about the homestead that you need title. In that case, any arguable equitable interest, in fact, your honors have mentioned one, it's possession, is protected. And with that, I'll rest. Or not rest, I'll stop talking, your honor. Thank you. All right, thanks very much. This appeal will stand submitted.
judges: This, Is, A. Test